# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IRONSHORE SPECIALTY INSURANCE
COMPANY,

        Plaintiff,

v.

FACILITY IMS, LLC, THOMAS D.
SCOTT, ROBERT J. RIEK, GARY D.
ANDERSON, GENE LUNCEFORD,
MELINDA S. PROVENCE, and
EVELYN BREAUX TENNYSON, as
administrator of the ESTATE OF
MICHAEL D. TENNYSON,

        Defendants.

Civil Action No. 3:23-CV-00296-K

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiff Ironshore Specialty Insurance Company's ("Ironshore") Motion for Leave to File First Amended Complaint and First Amended Answer to Defendants' Counterclaim (the "Motion for Leave to Amend"), Doc. No. 66, Defendants Facility IMS, LLC, Thomas D. Scott, and Robert J. Riek's (collectively, "Facility IMS," and, together with Ironshore, the "Parties") Response and Supporting Brief in Opposition to Ironshore's Motion for Leave to File First Amended Complaint and First Amended Answer, Doc. No. 69, Ironshore's Reply in Support of Its First Amended Complaint and First Amended Answer to Defendants' Counterclaim, Doc. No. 71, Facility IMS's Motion for Summary Judgment Denying Plaintiff's Claims (the "Motion for Summary Judgment") and Brief and Appendix in support thereof, Doc. Nos. 39–

1

41, Ironshore's Response in Opposition to the Facility IMS Defendants' Motion for Summary Judgment and Brief and Appendix in support thereof, Doc. Nos. 50–52, Facility IMS's Reply in Support of Motion for Summary Judgment Denying Plaintiff's Claims, Doc. No. 59, Facility IMS's Response and Brief in Opposition to Ironshore's Alternative Motion for Leave to Amend Complaint, Doc. No. 58, Facility IMS's Motion and Supporting Brief to Strike Ironshore's Opposition Summary Judgment Evidence (the "Motion to Strike"), Doc. No. 56, Ironshore's Brief in Opposition to the Facility IMS Defendants' Motion to Strike Ironshore's Summary Judgment Opposition Evidence, Doc. No. 65, Facility IMS's Reply in Support of Motion to Strike Ironshore's Opposition Summary Judgment Evidence, Doc. No. 68, Ironshore's Motion for Leave to File Supplemental Declaration (the "Motion for Leave to File"), Doc. No. 57, Facility IMS's Response and Supporting Brief in Opposition to Ironshore's Motion for Leave to File Supplemental Declaration, Doc. No. 62, Ironshore's Amended Motion for Leave to File Documents Under Seal (the "First Amended Motion to Seal"), Doc. No. 54, and Ironshore's superseding Amended Motion for Leave to File Documents Under Seal (the "Second Amended Motion to Seal") and Provisionally Sealed Brief in support thereof, Doc. Nos. 60–61.

Upon consideration of the Parties' submissions, the Court **GRANTS** Ironshore's Motion for Leave to Amend its pleadings in part and **DENIES** it in part without prejudice. Ironshore, an insurer, primarily seeks permission to pursue recovery of overpayments it may have made to Facility IMS, its insured. Facility IMS offers no persuasive

reason to prevent Ironshore from trying to recover the allegedly excessive payments, and the Court will permit Ironshore to do so.  Facility IMS argues more persuasively that Ironshore's remaining allegations are futile.  Ironshore alleges that Facility IMS breached contractual obligations to cooperate with Ironshore and settle claims with its consent, but Ironshore fails to allege that the breaches caused Ironshore harm.  The Court will permit Ironshore to file another motion for leave to amend its pleading to address this failure.

Because the Court grants Ironshore's Motion for Leave to Amend in part, the Court **DENIES** Facility IMS's Motion for Summary Judgment without prejudice.  In the interest of judicial economy, each Party may file or renew a summary judgment motion addressing all amended or unamended claims on which it seeks judgment in a single brief.  Since the Court denies Facility IMS's Motion for Summary Judgment, it also **DENIES** Facility IMS's Motion to Strike Ironshore's summary judgment evidence and Ironshore's Motion for Leave to File supplemental summary judgment evidence as moot.

The Court **DENIES** without prejudice Ironshore's Motion to Seal several portions of its summary judgment filings.  Some of the information Ironshore seeks to seal appears to be stale.  Other information concerns amounts Ironshore actually paid or considered paying to settle claims against Facility IMS.  Ironshore predicts that disclosure of these amounts will make settlement of other claims against Facility IMS more challenging, but the Fifth Circuit has expressly rejected this rationale for sealing

3

documents.  Nor can the Court accept Ironshore's alternative contention that the amounts are privileged.  Ironshore appears to have filed the allegedly privileged material voluntarily, and Ironshore has not supported its contention with citations to applicable Texas privilege law.  The Court will allow Ironshore one more opportunity to strengthen its Motion to Seal before it unseals the documents Ironshore submitted.

## I.   BACKGROUND

### A. Facts

The Court draws the following facts from Ironshore's proposed First Amended Complaint and its attachments and assumes they are true.  Doc. No. 66-1 ("FAC"); Doc. Nos. 1-2, 1-3, 1-4, 1-5 (collectively, "Pol'y"); Doc. No. 1-1.

Facility IMS is the subject of numerous lawsuits across the country alleging that it operated nursing homes where residents suffered injuries or died (the "Underlying Lawsuits").  FAC ¶ 15.  Between 2014 and 2018, Ironshore insured Facility IMS and some of its personnel against errors and omissions in providing their customers professional services.  Pol'y § I(A).  Because of the Underlying Lawsuits against Facility IMS, Ironshore has now spent more than a million dollars paying defense costs and judgments or settlements for Facility IMS.  FAC ¶¶ 43–50.

Under the insurance policies issued by Ironshore (the "Policies"), one million dollars is Ironshore's maximum liability for a single claim against Facility IMS.  *Id.* ¶¶ 44–45.  The Policies provide that related claims "shall be deemed to be" and "will be treated as a single Claim" regardless of the number or timing of related claims, the

number or identity of the claimants or insureds, and whether the claims arise in individual or class actions. *Id.* ¶ 30. Related claims are claims

> arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions, or events, whether related logically, causally, or in any other way, in any combination, whether or not involving more than one policy, practice, procedure or product, including any course of treatment, and whether or not deemed a continuous tort.

*Id.* ¶ 29.

The Policies contemplate that Ironshore and Facility IMS will work together to settle claims. A "Cooperation Provision" states that, in the "event of a Claim, [Facility IMS] shall provide [Ironshore] with all information, assistance and cooperation that [Ironshore] reasonably requests." *Id.* ¶ 54. A "Consent Provision" states that no "Insured shall, except at its own cost, incur any expense, make any payment, admit liability for, assume any obligation, or settle any Claim without [Ironshore's] written consent." *Id.* ¶ 52.

Ironshore need not cover a claim until Facility IMS pays a $350,000 "self-insured retention" toward the claim. *Id.* ¶ 26; Pol'y Item 4. A "Reimbursement Provision" of the Policies gives Ironshore the "right and option" to "pay all or any portion of the applicable . . . self-insured retention on behalf of" Facility IMS, "in which event [Facility IMS] will repay [Ironshore] any amounts so paid." FAC ¶ 26.

Facility IMS stopped paying self-insured retentions attributable to the Underlying Lawsuits in February 2019, telling Ironshore that it was "not in a position" to pay them. *Id.* ¶ 43.

### B. Procedural History

On February 9, 2023, Ironshore filed this action to recover the self-insured retentions Facility IMS refused to pay. Doc. No. 1 ¶ 1. Facility IMS counterclaimed, alleging that Ironshore failed to cover its share of a settlement Facility IMS arranged with Wilkes & Associates, the firm representing many of the plaintiffs in the Underlying Lawsuits (the "Wilkes Plaintiffs"). Doc. No. 24 ¶¶ 95–102. Ironshore filed an Answer to the counterclaim a little less than a month later. Doc. No. 33.

Facility IMS then filed an early Motion for Summary Judgment on Ironshore's claims. Doc. No. 39. In its Motion, Facility IMS asserts that it has no outstanding obligation to pay self-insured retentions because the claims in the Underlying Lawsuits are related claims. Doc. No. 40. Facility IMS reasons that the Policies treat related claims as a single claim subject to a single self-insured retention, and Facility IMS has already paid the self-insured retention for a single claim. *Id.* at 31–36.

After Ironshore responded to the Motion for Summary Judgment, Facility IMS filed a motion to strike Ironshore's opposition evidence, and Ironshore sought leave to supplement its evidence. Doc. Nos. 56–57. Ironshore also requested leave to file portions of its summary judgment briefing and evidence under seal, which the Court twice denied for failure to comply with the Court's procedures. Doc. Nos. 49, 53–55.

6

Ironshore's Second Amended Motion to Seal portions of its briefing and evidence re-
mains pending.  Doc. Nos. 60–61.

   With all of the foregoing motions on file, Ironshore moved for leave to amend
its complaint.  Doc. No. 66.  In its proposed amended complaint, Ironshore first con-
tends that Facility IMS settled with the Wilkes Plaintiffs without cooperating with
Ironshore during the settlement process or obtaining Ironshore's consent to the settle-
ment.  FAC ¶ 72.  According to Ironshore, this breached the Cooperation and Consent
Provisions of the Policies.  *Id.*  Ironshore also seeks attorneys' fees under a Texas statute
permitting fees awards in breach of contract cases.  *Id.* at 20.

   In another portion of its proposed amended complaint, Ironshore claims that it
overpaid Facility IMS and should be able to recover the overpayments in unjust en-
richment.  *Id.* ¶¶ 76–79.  Ironshore explains that the Underlying Lawsuits are subject
to the coverage limit for a single claim if they involve related claims, and Ironshore has
already paid more than the single claim coverage limit on behalf of Facility IMS.  *Id.*
¶¶ 64–79.  Ironshore seeks related declaratory relief resolving whether the Underlying
Lawsuits involve related claims, whether they are subject to the coverage limit for a
single claim, and whether Ironshore is entitled to amounts paid in excess of the single
claim coverage limit.  *Id.* ¶¶ 64–66.

   Ironshore proposes a handful of amendments to its Answer on similar theories.
Among other things, Ironshore seeks to offset its alleged excess payments against any
recovery Facility IMS may obtain on its counterclaim for coverage of the settlement

with the Wilkes Plaintiffs.  Doc. No. 66-2 ¶ 30.  Ironshore also asserts that Facility
IMS is "quasi-estopped" from pursuing its counterclaim, evidently on the basis that
Facility IMS is acting inconsistently when it seeks coverage of the Wilkes Plaintiffs'
settlement exceeding the coverage limit for a single claim and simultaneously asserts
that the Underlying Lawsuits involve related claims subject to the self-insured retention
for a single claim.  Doc. No. 66-2 ¶¶ 27, 31.

## II.    MOTION FOR LEAVE TO AMEND

The Court begins by granting in part and denying in part Ironshore's Motion
for Leave to Amend its pleadings.  Facility IMS objects to Ironshore's Motion solely on
the basis that Ironshore's proposed amendments are futile, and the Court limits its
analysis accordingly.  Doc. No. 69 at 6.

### A. Legal Standard

The Court permits amendment of pleadings freely when justice so requires.  Fed.
R. Civ. P. 15(a).  The Court will deny amendment of claim as futile if the amended
claim would fail to meet the "same standard of legal sufficiency as applies under [Fed-
eral Rule of Civil Procedure] 12(b)(6)."  *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368,
379 (5th Cir. 2014) (citation omitted).  A claim fails to satisfy Rule 12(b)(6) if the
plaintiff does not plead facts sufficient to make the claim plausible.  *City of Clinton v.
Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679).
In assessing the plausibility of Ironshore's proposed amended claims, the Court

assumes that Ironshore's factual allegations are true but does not assume that its legal conclusions are true. *Arroyo v. Oprona, Inc.*, 736 F. App'x 427, 430 (5th Cir. 2018).

The Court similarly permits amendment of affirmative defenses unless the amendment would be futile. *Xtria LLC v. Tracking Sys., Inc.*, 2010 WL 1541505, at *3 (N.D. Tex. Apr. 16, 2010) (Fitzwater, C.J.). An amendment to an affirmative defense is futile if the amended defense is insufficient as a matter of law. *Sprint Sols., Inc. v. Precise Wireless Int'l Inc.*, 2015 WL 2359519, at *2 (S.D. Tex. May 15, 2015); *see also United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013).

The Parties assume that the substantive law of Texas applies to Ironshore's proposed pleadings, and the Court joins in their assumption. *Reynolds v. American-Amicable Life Ins. Co.*, 591 F.2d 343, 344 (5th Cir. 1979) (per curiam); *Tifford v. Tandem Energy Corp.*, 562 F.3d 699, 705 n.2 (5th Cir. 2009).

### B. Discussion

The Court concludes that Ironshore's proposed breach of contract claims and request for attorneys' fees are futile, but Ironshore's proposed unjust enrichment claim, request for declaratory relief, and amendments to its Answer are not. The Court takes each set of proposed amendments in turn.

#### 1. *Breach of Contract*

Facility IMS brings two challenges to Ironshore's proposed claims that Facility IMS breached the Cooperation and Consent Provisions of the Ironshore Policies by

unilaterally settling with the Wilkes Plaintiffs.  The Court finds only the second challenge persuasive.

Facility IMS's first challenge relies on the overlapping concepts of contractual "conditions" and contractual "covenants" under Texas law.  A condition is an event whose non-occurrence excuses a party from performing under a contract.  *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010).  A covenant is a contractual promise of action or inaction whose breach may give rise to a claim for damages.  *Id.* at 108.  A party's substantial compliance with a covenant is a condition of its counterparty's performance under a contract, but lesser breaches of a covenant will not excuse the counterparty's performance.  *Id.*; Restatement (Second) of Contracts § 237.  The Court distinguishes covenants from conditions by determining which type of provision the Parties intended to adopt, keeping in mind that the law favors covenants over conditions.  *Criswell v. Eur. Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990).

According to Facility IMS, its obligations to cooperate with Ironshore and obtain Ironshore's consent to the Wilkes Plaintiffs' settlement are conditions, but not covenants, they must fulfill before Ironshore must contribute to the settlement.  Doc. No. 69 at 14–15.  On that interpretation, if Facility IMS breached the Cooperation and Consent Provisions of the Policies, Ironshore can refuse to cover its share of the settlement cost, but it cannot pursue a breach of contract claim for damages.  *Id.*

10

Facility IMS's interpretation does not fit the Policies' Cooperation Provision. The Cooperation Provision requires Facility IMS, in the event of a claim, to provide Ironshore with all "information, assistance and cooperation" it reasonably requests. Pol'y § IV(J). The provision does not make Ironshore's payment of the claim contingent on Facility IMS's cooperation; it tells Facility IMS what it must do if it receives a claim for damages covered by the Policies. *See PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636 (Tex. 2008).

The Policies' Consent Provision also memorializes a covenant rather than a mere condition. The Consent Provision is an agreement to pay for unapproved settlements. It states that Facility IMS may not settle a claim without Ironshore's written consent "except at its own cost." Pol'y § IV(D)(1). If Facility IMS improperly shifts the costs of an unauthorized settlement to Ironshore, it breaches the Consent Provision, and Ironshore can recover the costs. *Md. Cas. Co. v. Am. Home Assur. Co.*, 277 S.W.3d 107, 113 n.12 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd) (construing nearly identical policy language as setting forth a covenant); *see also KIT Projects, LLC v. PLT P'ship*, 479 S.W.3d 519, 526 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (construing agreement to pay as covenant). There is no indication that Ironshore agreed to limit its remedies to withholding additional payments in that circumstance. Had it done so, the Parties presumably would have inserted language in the Consent Provision that is closer to the language they inserted in neighboring provisions. For example, in one

neighboring provision, Ironshore explains that it will "have no obligation to pay" for losses if payments reach a liability cap. Pol'y § IV(D)(2).

The Court acknowledges that several federal courts have found that an insured's compliance with the cooperation provision in an insurance policy is a condition of the insurer's performance rather than covenant to cooperate whose breach can give rise to a claim for damages. *Beaufort Dedicated No. 5, Ltd. v. USA Daily Exp., Inc.*, 2012 WL 6608869, at *8 (S.D. Tex. Dec. 18, 2012); *Evanston Ins. Co. v. Tonmar, L.P.*, 669 F. Supp. 2d 725, 732 (N.D. Tex. 2009) (Fitzwater, J.); *Phila. Indem. Ins. Co. v. Stebbins Five Cos., Ltd.*, 2002 WL 31875596, at *6 (N.D. Tex. Dec. 20, 2002) (Lynn, J.). Because the federal decisions do not reproduce the full text of the cooperation provisions the courts considered, the Court does not find them especially helpful in interpreting the Cooperation or Consent Provisions of the Ironshore Policies. The only relevant Texas precedent cited in the federal decisions turns on an analysis of policy text. *Progressive Cnty. Mut. Ins. Co. v. Trevino*, 202 S.W.3d 811, 815–16 (Tex. App.—San Antonio 2006, pet. denied). In that case, the Court of Appeals concluded that a requirement that a person "seeking any coverage" must cooperate with an insurer conditioned coverage on cooperation. *Id.* The Policies Ironshore issued to the Facility IMS Defendants do not contain similar language. To the extent that the federal decisions characterize cooperation clauses as mere conditions because insurers typically invoke the clauses to avoid paying claims, the Court finds the decisions unpersuasive. *E.g.*, *Phila. Indem.*, 2002 WL 31875596, at *6. The defensive use of cooperation provisions is consistent

with them operating as covenants.  A material breach of a covenant excuses the non-breaching party's performance just as the failure of a condition does.  *Solar Applications*, 327 S.W.3d at 108.

Where no policy language dictates the result, the more persuasive rationale for denying an insurer damages when an insured settles a claim without cooperating with the insurer or obtaining the insurer's consent is that the insurer has not suffered harm. If the settlement is prejudicial to the insurer, the insurer can simply refuse to pay the claim.  *See Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 382 (Tex. 2009); *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994).

This is the basis for Facility IMS's second challenge to Ironshore's proposed contract claims, and the Court agrees that Ironshore has not pled damages caused by Facility IMS's alleged failure to cooperate with Ironshore and obtain its consent to the settlement with the Wilkes Plaintiffs.  Doc. No. 69 at 14.  Ironshore's proposed pleading generically recites that "Ironshore has sustained damages" without tying the damages to Facility IMS's alleged breaches of the Cooperation and Consent Provisions. FAC ¶ 74.  Without more specific damages allegations, Ironshore's proposed amendments are futile.  *See Langen v. Sanchez Oil & Gas Corp.*, 2019 WL 1674348, at *4 (S.D. Tex. Apr. 17, 2019) (dismissing claim for breach of consent-to-settlement provision for failure to plead damages with sufficient specificity).

The Court also rejects Ironshore's offer, made for the first time in its reply brief, to supplement its damages allegations.  Doc. No. 71 at 9.  Ironshore asserts that Facility

13

IMS settled only some of the claims in some of the Underlying Lawsuits for which Ironshore may have to provide coverage, preventing Ironshore from settling the Underlying Lawsuits in full and putting money in the pockets of the attorneys prosecuting surviving claims. *Id.* at 8–9. Whether these allegations sufficiently describe recoverable damages is a question the Court will not answer without first giving Facility IMS an opportunity to state its position. The allegations also raise a question neither Party has briefed: whether the purported losses Ironshore describes are "costs" that Facility IMS must bear under the Consent Provision permitting it to enter unauthorized settlements only "at its own cost." Pol'y § IV(D)(1). If they are not, then Facility IMS did not breach the Consent Provision, and the Parties' remaining arguments with respect to the provision are moot. *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 768 (Tex. 2014). The Court will permit Ironshore to file another motion to amend its pleading so that both Parties can address the sufficiency of Ironshore's newly proposed allegations.

### 2. *Attorneys' Fees*

The Court denies Ironshore leave to seek attorneys' fees because Ironshore does not identify any claim it has pled for which they are appropriate relief. In its briefing, Ironshore claims attorneys' fees solely as potential relief for Facility IMS's purported breach of the Reimbursement Provision of the Ironshore Policies. Doc. No. 71 at 10. The Reimbursement Provision requires Facility IMS to repay Ironshore to the extent Ironshore advances money toward self-insured retentions on Facility IMS's behalf.

Pol'y § IV(A)(8).  If Facility IMS did not repay advances, that breach of contract would entitle Ironshore to attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001(b), which authorizes fees awards to parties prevailing on contract claims.  *Price v. Allstate Ins. Co.*, 190 F. App'x 360, 362 (5th Cir. 2006).  While Ironshore's reasoning is sound, it did not plead that Facility IMS breached the Reimbursement Provision in its proposed amended complaint.  The Court will not let Ironshore seek remedies for unpled claims.

### 3.  *Unjust Enrichment*

The Court grants Ironshore leave to amend its unjust enrichment claim.  According to Ironshore, if the claims in the Underlying Lawsuits against Facility IMS are related claims, then they are subject to a collective coverage limit of one million dollars, and Ironshore's payments in excess of one million dollars to settle some of the claims was a mistake that unfairly benefited Facility IMS.  FAC ¶ 77.  Although the claim may be untenable, none of the Parties' arguments establish that it is.

Sorting out the Parties' positions begins with clarifying what they have not argued.  Facility IMS does not rely on the Fifth Circuit's decision in *Aldous v. Darwin Nat'l Assur. Co.*, which held that, "under Texas law, an insurer has no right of equitable reimbursement against its insured."  851 F.3d 473, 485 (5th Cir. 2017), *adhered to in relevant part on reh'g*, 889 F.3d 798 (5th Cir. 2018).  Facility IMS has forfeited the argument that *Aldous* forecloses Ironshore's proposed claims for purposes of resolving the motions pending before the Court.

15

Facility IMS instead argues that it has not been unjustly enriched by Ironshore's alleged overpayments, or at least that Ironshore cannot rely on equitable principles of unjust enrichment to recover the overpayments because the Policies govern Ironshore's payments.  Doc. No. 69 at 11–12.  That argument echoes the familiar principle that a party who has agreed to a distribution of benefits and costs in an express contract cannot use an unjust enrichment claim to extract additional benefits inconsistent with the distribution.  *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

That argument is also a nonstarter.  Ironshore is not attacking the agreed distribution of benefits and costs under the Policies.  It alleges that it spent even more money for Facility IMS's benefit than the Policies required.  FAC ¶ 77.  Courts have uniformly held that parties may recover excess payments of this sort in unjust enrichment. *Sw. Elec. Power Co. v. Burlington N. R.R.*, 966 S.W.2d 467, 469 (Tex. 1998); *Unum Life Ins. Co. of Am. v. Munoz*, 2007 WL 628084, at *4 (N.D. Tex. Feb. 27, 2007) (Fish, J.) (granting plaintiff summary judgment on overpayment-of-benefits claim).

Facility IMS contends that Ironshore's proposed unjust enrichment claim is time-barred regardless of its merits, but the Court sees no basis for Facility IMS's contention.  Doc. No. 69 at 12–13.  The Court generally will not reject a pleading on statute of limitations grounds unless it is clear from the face of the pleading that the statute of limitations is dispositive of the claims pled.  *Evanston Ins. Co. v. Nat'l Union Fire Ins. Co.*, 2010 WL 11527373, at *9 (E.D. Tex. Apr. 5, 2010).

Facility IMS points to Ironshore's allegation that Facility IMS stopped paying self-insured retentions in February 2019, about four years before filing this action. Doc. No. 69 at 12–13 (citing FAC ¶¶ 35, 43). If Ironshore's unjust enrichment claim accrued at that time, as Facility IMS contends, the applicable two-year statute of limitations would bar the claim. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007). Facility IMS's reasoning breaks down because the allegation on which it relies establishes when Facility IMS purportedly stopped making payments to Ironshore, not when Ironshore stopped making payments on behalf of Facility IMS. Doc. No. 69 at 12–13. Ironshore's proposed claim seeks recovery of a portion of the latter, which may permissible if the payments were sufficiently recent. *See Allen v. Wilson*, 2016 WL 832780, at *6 (Tex. App.—Mar. 4, 2016, pet. denied) (finding that unjust enrichment claims accrued on the dates of each of several alleged payments benefiting the defendant).

While the Court rejects Facility IMS's statute of limitations argument at this stage of the proceedings, it also rejects Ironshore's assertion that the unjust enrichment claim accrued on May 17, 2023, when Facility IMS filed its Motion for Summary Judgment asserting that the Underlying Lawsuits against Facility IMS involve related claims. Doc. No. 71 at 5–6. An unjust enrichment claim accrues when a defendant wrongfully obtains a benefit it would be unconscionable to retain because that is when the party conferring the benefit can seek relief. *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 720 (Tex. App.—Dallas 2015, no pet.). Facility IMS's allegedly wrongful act was not

17

filing a summary judgment motion, although Ironshore may not have realized that Facility IMS retained the alleged overpayments from Ironshore prior to the filing.  The allegedly wrongful act was the receipt and retention of the overpayments.  FAC ¶ 77; *see Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 411 & n.16 (5th Cir. 2004) (claim accrued upon wrongful receipt of funds); *Gaffar v. Kamal*, 2011 Tex. App. LEXIS 5714, at *7 (Tex. App.—Dallas July 27, 2011, no pet.) (claim accrued upon wrongful receipt of funds despite later discovery of fraud).

Ironshore's purported failure to appreciate that Facility IMS received and retained alleged overpayments until Facility IMS moved for summary judgment does not, as Ironshore contends, defer accrual of Ironshore's unjust enrichment claim under the "discovery rule."  Doc. No. 71 at 6.  In limited circumstances, the discovery rule defers accrual of a claim until a plaintiff knows, or in the exercise of reasonable diligence should know, of the facts giving rise to the claim.  *Ross v. NavyArmy Cmty. Credit Union*, 2022 WL 100110, at *5–6 (S.D. Tex. Jan. 11, 2022).  Ironshore does not suggest that it was unaware of its payments on behalf of Facility IMS or any other fact supporting its proposed unjust enrichment claim.  Ironshore's proffered basis for deferral amounts to the possibility that Ironshore did not realize that its payments were overpayments because it misunderstood the payment provisions in its Policies until Facility IMS offered an interpretation of them.  Ironshore's alleged confusion about the legal effect of the Policies does not trigger the discovery rule.  The "discovery rule applies to the knowledge of facts on the part of the [plaintiff] as opposed to a knowledge of the law."

*White v. Cole*, 880 S.W.2d 292, 295 (Tex. App.—Beaumont 1994, writ denied). To the extent that Ironshore faults Facility IMS for not sharing its legal reasoning earlier, Ironshore fails to allege any facts suggesting that Ironshore needed Facility IMS's advice before it could discover the purported overpayments underlying its claim. *See Wagner & Brown v. Horwood*, 58 S.W.3d 732, 735–37 (Tex. 2001) (rejecting application of discovery rule where lessee failed to notify royalty owners that it retained excessive sums).

Because Facility IMS's attack on the merits of Ironshore's proposed unjust enrichment claim fails and because neither Party establishes when the claim accrued for purposes of the applicable two-year statute of limitations, the Court will permit Ironshore to assert the claim.

### 4. *Declaratory Relief*

The Court also permits Ironshore to seek the declaratory relief outlined in its proposed amended pleading. In its proposed amendments, Ironshore seeks three declarations: (1) a declaration that the Underlying Lawsuits against Facility IMS do or do not rest on related claims, (2) a declaration that coverage for the Underlying Lawsuits is capped at one million dollars if they rest on related claims, and (3) a declaration that Ironshore has no further coverage obligations and is entitled to reimbursement from Facility IMS if the Underlying Lawsuits rest on related claims because Ironshore has paid sums in excess of the one million dollar limit on behalf of Facility IMS. FAC ¶¶ 64–66.

Facility IMS objects to the first two proposed requests for declaratory relief as superfluous. According to Facility IMS, Ironshore has no reason to ask for declarations about the relatedness of the claims against Facility IMS or the coverage limit for those claims because Facility IMS's pleadings already ask the Court to opine on the same topics. Doc. No. 69 at 10–11. Courts have discretion to refuse to entertain requests for declaratory relief when their rulings on other claims and defenses will resolve the same issues raised by the requests. *Encompass Off. Sols., Inc. v. BlueCross BlueShield of Texas*, 2012 WL 13237487, at *6 (N.D. Tex. Nov. 26, 2012) (Solis, J.); *Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.).

The Court finds no occasion to exercise such discretion because it disagrees with the premise that Ironshore's requests for declaratory relief are duplicative of Facility IMS's pleadings. In its pleadings, Facility IMS alleges that Ironshore must make payments toward Facility IMS's settlement with the Wilkes Plaintiffs, but Facility IMS nowhere alleges that the Wilkes Plaintiffs' claims are or are not related claims. Doc. No. 24. The relatedness of the claims and the consequences of relatedness under the Policies are issues raised by Ironshore's first two requests for declaratory relief. FAC ¶¶ 64–65.

The Court acknowledges that Facility IMS's current strategy for proving its affirmative defenses and counterclaims, expressed in its Motion for Summary Judgment, relies on the proposition that the Underlying Lawsuits against Facility IMS involve

related claims.  Doc. No. 39.  Because the Court denies Facility IMS's Motion for

Summary Judgment without prejudice, and because Facility IMS's pleadings do not

commit Facility IMS to litigating the relatedness of the claims against it, the Court

believes the "safer course" is to permit Ironshore to pursue declaratory relief while there

is some "doubt that it will be rendered moot by the adjudication of the main action."

6 Wright & Miller, Fed. Prac. & Proc. § 1406 (Apr. 2023 update); *Amerisure Ins. Co. v.

Thermacor Process, Inc.*, 2021 WL 1056435, at *7 (N.D. Tex. Mar. 19, 2021)

(Pittman, J.) (declining to dismiss request for declaratory relief where request raised

theory of duty to defend that affirmative claims might not raise).

Facility IMS objects to Ironshore's third request for declaratory relief on differ-

ent grounds, but the Court finds them similarly baseless.  According to Facility IMS,

Ironshore cannot obtain a declaration that it is entitled to reimbursement of alleged

overpayments made on Facility IMS's behalf because Ironshore has no underlying right

to reimbursement.  Doc. No. 69 at 9–10.  Facility IMS relies on the principle that a

declaratory judgment is a remedy for an underlying claim rather than an independent

cause of action.  *Braidwood Mgmt. v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023).  Since

the Court grants Ironshore leave to assert its unjust enrichment claim for reimburse-

ment, the Court cannot accept Facility IMS's position at this stage of the proceedings.

*Bent v. U.S. Bank Nat. Ass'n*, 2015 WL 3454226, at *6 (N.D. Tex. May 29, 2015)

(Godbey, J.) (permitting request for declaratory relief predicated on sufficient allega-

tions of unjust enrichment to proceed).

21

5. *Ironshore's Answer*

The Court grants Ironshore leave to amend its Answer.  Facility IMS offers only conclusory objections to Ironshore's proposed amendments.  To the extent that the Court can discern the bases for the objections, the Court finds them unpersuasive.

Facility IMS's first objection reprises a theory the Court has already rejected. Facility IMS asserts that Ironshore cannot offset any overpayments it allegedly made on behalf of Facility IMS against amounts it may owe Facility IMS in coverage of the Wilkes Plaintiffs' settlement.  Doc. No. 69 at 10.  Facility IMS apparently reasons that Ironshore has no right to reimbursement of the alleged overpayments.  *Id.*  The Court's ruling permitting Ironshore to seek recovery of alleged payments in excess of the Policies' coverage limits undermines this reasoning.  *Supra* Section II.B.3; *cf. also Shoop v. Devon Energy Prod. Co., L.P.*, 2013 WL 12251353, at *21 (N.D. Tex. Mar. 28, 2013) (Solis, J.) (permitting offset theory to proceed past summary judgment even in the absence of unjust enrichment where defendant purportedly voluntarily overpaid royalties).

Facility IMS's second objection is nearly indecipherable.  Facility IMS evidently disputes the validity of Ironshore's quasi-estoppel defense.  Quasi-estoppel "precludes a party from accepting the benefits of a transaction and then taking a subsequent inconsistent position to avoid corresponding obligations or effects."  *Cambridge Prod. v. Geodyne Nominee Corp.*, 292 S.W.3d 725, 732 (Tex. App.—Amarillo 2009, pet. denied). Ironshore apparently perceives an inconsistency between Facility IMS's assertion that

22

the Underlying Lawsuits against Facility IMS involve related claims collectively subject to the self-insured retention for a single claim and its demand for coverage of the claims that exceeds the liability limit for a single claim.  Doc. No. 66-2 ¶¶ 27, 31.  In opposition to this theory, Facility IMS offers a single sentence of argument, reproduced here in full with two preceding sentences of context:

> Under Texas law, there can be no recovery for unjust enrichment under a quasi-contract or contract implied-in-law theory when a valid, express contract covers the subject matter of the parties' dispute.  Accordingly, the proposed amendment to paragraph 79 of Ironshore's First Amended Complaint should also be denied as futile.  Ironshore's amendment in paragraph 31 of its proposed First Amended Answer—asserting a quasi estoppel defense to [Facility IMS's] Counterclaim—should also be denied for the same reason.

Doc. No. 69 at 12 (citations and internal quotation marks omitted).  Facility IMS does not explain why its reasoning about unjust enrichment is applicable to the defense of quasi-estoppel, nor does Facility IMS cite any authority holding that the defense rises or falls on the existence of a valid claim for unjust enrichment or a valid contract.  Perhaps Facility IMS intends to invoke the principle that a party acting in accordance with a contract is not quasi-estopped from enforcing the contract even if its counterparty mistakenly believes that the party's actions are inconsistent with the contract.  *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 638 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Neiman-Marcus Grp., Inc. v. Dworkin*, 919 F.2d 368, 370–71 (5th Cir. 1990).  If so, Facility IMS fails to connect that principle to its own actions under the Policies, and the Court will not invent arguments Facility IMS has not advanced.  The Court rejects Facility IMS's opposition to Ironshore's quasi-estoppel

23

defense as inadequately briefed.  *United States v. Shah*, --- F.4th ---, 2023 WL 6385685, at *29 (5th Cir. Oct. 2, 2023).

## III.   MOTION FOR SUMMARY JUDGMENT

Having granted Ironshore's Motion for Leave to Amend its pleadings in part, the Court denies Facility IMS's Motion for Summary Judgment without prejudice.  The Parties may seek summary judgment on one or more of Ironshore's amended claims or defenses.  Permitting each Party to urge a single summary judgment motion addressing all amended and unamended claims and defenses, rather than urging separate motions addressing amended and unamended claims, will best serve judicial economy.  The Parties may file or renew motions for summary judgment in accordance with the Scheduling Order in this action.  Doc. No. 38; *Haynes v. Ryan Drilling, LLC*, 2016 WL 11585280, at *2 (W.D. Tex. Mar. 21, 2016) (denying summary judgment to permit renewed filing in light of amended pleading).  The Court's denial of Facility IMS's Motion for Summary Judgment moots Facility IMS's Motion to Strike Ironshore's summary judgment evidence and Ironshore's Motion for Leave to File supplemental summary judgment evidence.  Doc. Nos. 56–57.

The Court reminds the Parties that they should point to specific evidence in their briefing if they wish the Court to consider the evidence in ruling on any summary judgment motion.  *Jesus Church of Victoria Tex., Inc. v. Church Mut. Ins. Co.*, 2022 WL 4238089, at *6 n.5 (S.D. Tex. Sept. 13, 2022) (citing *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)); Fed. R. Civ. P. 56(c)(1), (3); N.D. Tex. L. Civ.

R. 56.5(c).  In the Motion for Summary Judgment denied by the Court, Facility IMS cites almost exclusively to portions of pleadings in the Underlying Lawsuits that recite generic legal conclusions, like the conclusion that Facility IMS failed to provide a client-plaintiff "reasonable and appropriate healthcare services." *See* Doc. No. 40 at 17–26. If Facility IMS intends to argue that the claims against it in the Underlying Lawsuits are related claims under the Ironshore Policies and does not intend to rely on the sweeping theory that all claims for negligent provision of healthcare are related claims, Facility IMS must cite more specifically to the circumstances showing that the claims are related.

## IV.    MOTION TO SEAL

Because the Court considered Ironshore's summary judgment brief and exhibits in denying Facility IMS's Motion for Summary Judgment without prejudice, the Court turns to Ironshore's request for leave to file portions of the brief and exhibits under seal.  After the Court ordered Ironshore to amend its First Amended Motion to Seal to comply with the Court's order governing sealing, Ironshore filed a superseding Second Amended Motion to Seal.  The Court denies the First Amended Motion to Seal as moot and considers the Second Amended Motion to Seal.  Doc. Nos. 60–61.

Under the common law, the public enjoys presumptive access to documents filed on the Court's docket.  *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021).  The Court will seal documents or portions of documents only if "line-by-line" review of the documents reveals strong and specific reasons for denying public

access to the material to be sealed. *IFG Port Holdings, L.L.C. v. Lake Charles Harbor &
Terminal Dist.*, --- F.4th ---, 2023 WL 6151640, at \*7 (5th Cir. Sept. 21, 2023). The
Court has conducted its review and denies the Second Amended Motion to Seal with-
out prejudice.

### A. Confidential Business Information

Many of Ironshore's requests to seal portions of documents turn on an assess-
ment of whether those portions contain confidential business information. A party's
interest in sealing information that competitors would use to its disadvantage can over-
come the public's right to access judicial records. *Nixon v. Warner Commc'ns*, 435 U.S.
589, 598 (1978). Only a specific threat of competitive harm may justify sealing. *Van-
tage Health Plan v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 451 (5th Cir. 2019).

Ironshore seeks to seal snippets of its summary judgment brief, a supporting
declaration, and three other written communications between Ironshore and Facility
IMS because they reveal amounts Ironshore or Facility IMS spent or considered spend-
ing to settle a subset of the claims against Facility IMS. Doc. Nos. 61-1, 61-3, 61-4,
61-5, 61-6. Ironshore observes that the public has limited interest in learning these
amounts. Although Ironshore's satisfaction of the Policies' coverage limits may be an
issue in this case, the specific amounts of Ironshore's coverage payments are not at this
stage. *Cf. Geltzer v. Andersen Worldwide, S.C.*, 2007 WL 273526, at \*2 (S.D.N.Y. Jan.
30, 2007) (Lynch, J.) (refusing to seal amount of settlement for which bankruptcy
trustee sought approval because the amount was essential to the Court's approval or

disapproval of the settlement). Ironshore reasons that its own competitive interest in concealing the actual and potential settlement amounts outweighs the public's interest because disclosure of the amounts would advantage plaintiffs whose claims have not settled when they negotiate with Ironshore. Doc. No. 61 at 5–6.

While Ironshore's reasoning is superficially appealing, the Fifth Circuit has squarely rejected it. If disclosure of the settlement amounts might harm Ironshore "by exposing [it] to additional liability and litigation," that is "of no consequence" because "'a litigant is not entitled to the court's protection from this type of harm' where it arises solely because of the common law right of access" to judicial records. *Bradley v. Ackal*, 954 F.3d 216, 230 (5th Cir. 2020) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003)). The Fifth Circuit has left open the possibility that, in some circumstances, settlement amounts should be sealed if keeping them confidential was material to the decision to settle. *Id.* at 228. The Court also recognizes that the settlement of claims is a significant aspect of an insurer's business, and an insurer's settlement strategies may have competitive value that extends beyond negotiating settlements of claims under a single policy. Because Ironshore has not suggested that either consideration supports sealing here, the Court finds that the competitive interests served by sealing portions of the five documents discussing settlement amounts are not entitled to protection. The Court will give Ironshore one more opportunity to amend its sealing motion to identify interests supporting sealing.

Turning to the remaining document Ironshore seeks to seal, a 2013 email exchange, the Court finds that Ironshore has not sufficiently explained its interest in sealing the proposed redacted portions of the exchange, which discuss Ironshore's historical reserves and premium negotiations with Facility IMS. Doc. No. 61-2. Ironshore has completed its negotiations with Facility IMS and shared the exchange with Facility IMS. Perhaps Ironshore's past reserves and negotiations remain relevant to Ironshore's business with third parties despite being fully a decade old, but Ironshore has presented no declaration or other evidence indicating that they do. The Court is unwilling to find that the seemingly stale information Ironshore provided about its finances and negotiations should be sealed as a matter of law. *See Select Interior Concepts, Inc. v. Pental*, 2020 WL 2132575, at *4 (N.D. Tex. May 5, 2020) (Lindsay, J.) (refusing to seal documents from a three-year-old transaction merely because disclosure "could potentially" harm the transacting party). Ironshore is in a better position than the Court to know the sensitivity of such information in its industry. If Ironshore renews its sealing request, it should present facts supporting its position, including any concrete prejudice it will face or is likely to face from disclosure of the information.

## B. Privilege

Ironshore's relies on the federal common interest privilege as a second basis for sealing portions of its briefing and exhibits, including many of the same portions that purportedly contain confidential business information. Doc. No. 61. According to Ironshore, the documents it seeks to seal contain confidential communications among

Ironshore, Facility IMS, and outside counsel that enjoy protection from disclosure because they address claims against Facility IMS. *E.g.*, *id.* at 6–7.

The Fifth Circuit has not detailed the circumstances in which the application of a privilege outweighs the public's right of access to judicial records, but two guiding principles are discernible in the decisions of other courts. First, a party that puts its own privileged communications at issue in filings on the Court's docket generally waives the privilege and cannot seek to seal the communications on that basis. *See Joy v. North*, 692 F.2d 880, 893–94 (2d Cir. 1982); *cf. also In re Avantel, S.A.*, 343 F.3d 311, 324 (5th Cir. 2003) (placing documents under seal pending a ruling on whether they were privileged); Tex. Evid. R. 511(a) ("A person . . . waives [a] privilege if the person . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged."). Second, a party that does not put its own privileged communications at issue may seek to seal the communications by showing that the privilege survived the filing of the communications and the interests served by the privilege outweigh the public interest in access to the communications. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 125 (2d Cir. 2006); *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 462 (10th Cir. 1980). If the party consistently opposed disclosure of the communications, the Court will often seal them. *See Siedle v. Putnam Invs.*, 147 F.3d 7, 12 (1st Cir. 1998); *In re City of Houston*, 772 F. App'x 143, 144 (5th Cir. 2019) (per curiam).

Ironshore's threshold problem under these standards is that it appears to have put the documents it seeks to seal in issue. Ironshore filed the documents unprompted, and it is not obvious that Facility IMS's Motion for Summary Judgment compelled Ironshore to disclose the privileged contents of the documents rather than the non-privileged facts discussed in the documents. While Facility IMS is a party to the purportedly privileged documents, Ironshore does not contend that Facility IMS is asserting a privilege in opposition to disclosing them. Ironshore states only that Facility IMS is generally unopposed to Ironshore's Second Amended Motion to Seal. Doc. No. 60 at 15.

Assuming Ironshore could surmount these difficulties, the Court would still decline to seal Ironshore's filings on the briefing before it. Ironshore expressly relies on the federal common interest privilege, which protects communications between actual and potential co-defendants and their counsel made in furtherance of a common interest. Doc. No. 61 at 6; *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710–13 (5th Cir. 2001). The Court cannot apply the federal law of privilege because it is presiding in diversity over a dispute arising exclusively under state law. Instead, it must apply the privilege law of the forum state: Texas. *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 299 n.26 (5th Cir. 2005). Texas has no common interest privilege; it has an allied litigant privilege that protects communications from a client, its attorney, or the representative of either of them to an attorney or an attorney's representative representing another party in a pending action. *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 54 (Tex. 2012). Ironshore

may hold an allied-litigant privilege in some of the communications it wishes to seal, but Ironshore has presented no facts or legal authority tailored to the application of the privilege.

Since the Court permits Ironshore one more opportunity to show that the material it seeks to seal constitutes confidential business information, the Court will also permit Ironshore one more opportunity to show that the material should be sealed on the basis of privilege.  If Ironshore takes that opportunity, it should not assume that the Court is familiar with the facts relevant to a finding of privilege, including which individuals are attorneys or representatives of others and the status of the various lawsuits against Facility IMS.

## V.    CONCLUSION

The Court **GRANTS** in part and **DENIES** in part Ironshore's Motion for Leave to Amend.  Ironshore may make only its proposed amendments to its unjust enrichment claim, its request for declaratory relief, and its Answer.  Within seven days of the entry of this Order, Ironshore **SHALL FILE** (1) its First Amended Complaint, revised to reflect only those amendments permitted by the Order, and (2) redlines showing the differences between the filed pleading and Ironshore's Complaint, Doc. No. 1, and between the filed pleading and Ironshore's proposed First Amended Complaint.  Ironshore **MAY FILE** a motion for leave to further amend its pleading no later than fourteen days after the entry of this Order.  If Ironshore files such a motion, it must (1) attach its proposed amended pleading to the motion and (2) attach a redline to the

motion showing the differences between the proposed amended pleading and the plead-ing the Court has ordered Ironshore to file.

The Court **DENIES** Facility IMS's Motion for Summary Judgment without prej-udice.  The Court **DENIES** Facility IMS's Motion to Strike Ironshore's summary judg-ment evidence and Ironshore's Motion for Leave to File supplemental summary judg-ment evidence as moot.  The Parties **SHALL FILE** any subsequent motions for sum-mary judgment in accordance with the Court's Scheduling Order.  Doc. No. 38.

The Court **DENIES** Ironshore's Motion to Seal without prejudice.  Within twenty-one days of the entry of this Order, Ironshore **SHALL FILE** (1) a renewed mo-tion or (2) a notice abandoning its motion and stating whether any Defendant intends to file a motion requesting that any of the documents lodged provisionally under seal be filed under seal.  If a Defendant so intends, it **SHALL FILE** its motion no later than seven days after the filing of the notice.  If no Party requests that one or more of the documents be sealed, the Court **WILL UNSEAL** them upon receipt of the notice.  All documents lodged provisionally under seal **SHALL REMAIN UNDER SEAL** pending further order of the Court.

**SO ORDERED**.

Signed October 17th, 2023.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE